**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOSEPHINE MARTINEZ,
on behalf of A.V.G., a minor,

      Plaintiff,

    vs.                           No. 1:19-CV-00247-JAP-KRS

ANDREW SAUL, Commissioner of
the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff seeks review of the determination of the Commissioner of the Social Security

Administration ("SSA") that her minor child A.V.G. is not entitled to disability insurance

benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. On March 22, 2019,

in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States

Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an

ultimate disposition. (*See* Doc. 6) (Order of Reference). Having considered Plaintiff's Motion to

Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing (Doc. 24),

filed November 4, 2019; the Commissioner's response in opposition (Doc. 28), filed February 4,

2020; Plaintiff's reply (Doc 29), filed February 8, 2020; and Plaintiff's Notice of Supplemental

Authority (Doc. 31), filed June 15, 2020, the undersigned RECOMMENDS that the Court

GRANT Plaintiff's motion for the reasons set forth below.

### I. PROCEDURAL POSTURE

On August 18, 2015, Plaintiff filed an initial application for supplemental security

income ("SSI") on behalf of her minor child, A.V.G. (*See* Administrative Record ("AR") 70).

Plaintiff alleged that A.V.G. became disabled on April 1, 2009, when she was 7 years old, due to

a "[l]earning disability, dyslexia, attention deficit disorder, speech problems, [and] anxiety." (*Id.* at 170, 191-92). The application was denied at the initial level on February 19, 2016 (*id.* at 70-79, 93-96) and at the reconsideration level on July 26, 2016 (*id.* at 81-92, 102-05). Plaintiff requested a hearing (*id.* at 106-08), which Administrative Law Judge Cole Gerstner (the "ALJ") conducted on October 24, 2017 (*see id.* 39-69). A.V.G. was represented by counsel and testified at the hearing. (*Id.* at 39, 59-67). Plaintiff also testified at the hearing. (*Id.* at 44-59).

On April 25, 2018, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, A.V.G. was not disabled. (*Id.* at 7-33). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 34-35), and on February 15, 2019, the Appeals Council denied the request for review (*id.* at 1-5), which made the ALJ's decision the final decision of the Commissioner. On March 21, 2019, Plaintiff filed the complaint in this case on behalf of A.V.G., seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Child Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In the context of children's disability cases, a child is disabled if she has a medically determinable impairment that results in "marked and severe functional limitations" and meets the twelve-

month duration requirement of the Social Security Act. 42 U.S.C. § 1382c(a)(3)(C)(i). The

regulations provide for a three-step sequential process to determine a child's disability:

> [1] If you are doing substantial gainful activity, we will determine that you are not
> disabled and not review your claim further.
>
> [2] If you are not doing substantial gainful activity, we will consider your physical
> or mental impairment(s) first to see if you have an impairment or combination of
> impairments that is severe. If your impairment(s) is not severe, we will determine
> that you are not disabled and not review your claim further.
>
> [3] If your impairment(s) is severe, we will review your claim further to see if you
> have an impairment(s) that meets, medically equals, or functionally equals the
> listings. If you have such an impairment(s), and it meets the duration requirement,
> we will find that you are disabled. If you do not have such an impairment(s), or if
> it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a).

For an impairment to "functionally equal" a listing, the impairment "must be of listing-

level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an

'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The relevant domains of

functioning include (i) acquiring and using information; (ii) attending to and completing tasks;

and (iii) interacting and relating with others. 20 C.F.R. § 416.926a(b)(1).[1] For present purposes,

an "extreme" limitation in a domain of functioning interferes "very seriously" with a child's

ability to "independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(3)(i),

while a "marked" limitation interferes "seriously" with such abilities or is otherwise "'more than

moderate' but 'less than extreme,'" 20 C.F.R. § 416.926a(e)(2)(i).

---

[1] On appeal, Plaintiff does not claim that A.V.G. suffers from marked or extreme limitations in the remaining
domains of functioning, *i.e.*, moving about and manipulating objects, caring for one's self, and health and physical
well-being. *See* 20 C.F.R. § 416.926a(b)(1)(iv)-(vi). Accordingly, these domains are not addressed further.

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed A.V.G.'s claim pursuant to the three-step sequential evaluation process applicable to child claimants. (AR at 11). As to the first two steps, the ALJ concluded that A.V.G. had not engaged in substantial gainful activity and that she suffered from three severe impairments: a learning disorder, affective disorder, and anxiety disorder. (*Id.* at 13-14). However, the ALJ also concluded that none of A.V.G.'s impairments or combinations of impairments met or medically equaled the impairments listed under Appendix 1 of the SSA's Regulations at 20 C.F.R. § 404, Subpart P. (*Id.* at 14-16). Finally, the ALJ found that A.V.G. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (*See, e.g.*, *id.* at 16-17). Specifically, the ALJ found "less than marked" limitations in A.V.G.'s ability to acquire and use information, to attend to and complete activities, and to interact and relate with others, while finding "no limitation" in any other functional domains. (*See id.* at 22-27).

### IV.  DISCUSSION

Plaintiff argues that the ALJ improperly applied the governing legal standards when assessing the evidence of record by (1) ignoring evidence provided by A.V.G.'s multidisciplinary evaluation team; (2) ignoring teacher opinions that support a finding of disability; (3) failing to adequately consider A.V.G.'s accommodations when comparing her functioning to that of children without impairments; (4) failing to properly assess the opinions offered by the consultative examiner; and (5) failing to properly evaluate the credibility of Plaintiff's own testimony. Plaintiff further contends that A.V.G.'s impairments meet the functional equivalency test described at 20 C.F.R. § 416.924(a) because those impairments result in "at least marked impairments in three [functional] domains," and she argues that the ALJ's

findings to the contrary are unsupported by substantial evidence. (*See* Doc. 24 at 8).[2] Because the ALJ failed to apply the correct legal standards in his treatment of certain evidence, the undersigned does not reach this final claim of error.

### A. Multidisciplinary Evaluation Team Report

Plaintiff argues that the ALJ erred by "ignor[ing]" a multidisciplinary evaluation team ("MET") report dated May 8, 2015, which is included in the AR at Exhibit 1E. (*See* Doc. 24 at 10-11, 14-15). In support of this argument, Plaintiff notes that the MET report chronicles a history of "very low" to "average" performance by A.V.G. in a range of areas (*see* AR at 184-85), multiple "beginning step" or "fail" assessments in sixth and seventh grade standardized testing (*see id.* at 186), and the assignment of "maximum" special education services to address A.V.G.'s disability (*see id.* at 187). Plaintiff cites agency regulations and policies that she contends required the ALJ to explicitly consider of the contents of the MET report when assessing the extent of A.V.G.'s limitations in the functional domain of acquiring and using information. (*See* Doc. 24 at 14-15). The Commissioner does not respond to Plaintiff's arguments concerning the ALJ's failure to discuss the MET report, asserting only that the ALJ's finding of less than marked limitation in this domain was supported by substantial evidence. (*See* Doc. 28 at 11-12).

The problem with Plaintiff's argument is that the ALJ did not ignore the contents of the MET report—he expressly demonstrated that he considered those contents. The MET report not only appears in the AR at Exhibit 1E, but is also included in a broader record of Albuquerque

---

[2] In her motion and reply brief, Plaintiff also argued that remand was required because "the ALJ was not properly appointed under the Constitution's Appointments Clause at the time of the hearing and thus did not have legal authority to preside over this case or to issue an unfavorable decision." (*See* Doc. 24 at 26) (citing *Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044 (2018)). Plaintiff has withdrawn this argument in her Notice of Supplemental authority, acknowledging that recent Tenth Circuit precedent requires a finding that her Appointments Clause argument has been waived. (*See* Doc. 31) (citing *Carr v. Comm'r, SSA*, 961 F.3d 1267, 1273-76 (10th Cir. 2020)).

Public School records compiled at Exhibit 2F. (*Compare* AR 183-88 (MET report), *with id.* at 380-84 (same report)).[3] The ALJ's decision repeatedly cites to Exhibit 2F in an extensive paragraph devoted to a discussion of A.V.G.'s "performance at school, as evidenced by her education records." (*See id.* at 19) (citing pages 15-16 and 18-19 of Exhibit F). Indeed, the ALJ's decision cites to a page in the MET report featuring the very same sixth- and seventh-grade test results and qualitative evaluations highlighted by Plaintiff. (*Compare id.* at 391 (page 15 of Exhibit 2F, including test scores and qualitative summary), *with id.* at 186-87 (MET report with same data)). Further, the ALJ directly addressed those assessments, specifically stating that while these classroom-based assessments:

> found the claimant to be performing below-grade in reading, word recognition, reading vocabulary, reading comprehension, spelling, and sentence-writing, her academic records also describe numerous strengths, such as reading with expression; expressing herself adequately in written language; working independently towards improvement in math; and accomplishing most if not all classroom tasks (Exhibits 2F/15-16).

(*See id.* at 19) (citing to pages 15-16 of Exhibit 2F).

An ALJ must discuss not only the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, even assuming that the MET report assessments cited by Plaintiff were uncontroverted and/or probative, the record demonstrates that the ALJ appropriately considered and evaluated that evidence in conjunction with the other assessments in Plaintiff's education records. To the extent that Plaintiff challenges the ALJ's evaluation of those assessments (*see* Doc. 24 at 14), the Court is in no position to

---

[3] The copy of the MET report in Exhibit 2F is missing a single page which features a record of the schools attended by A.V.G. in grades 5 through 8, her total absences for each of those school years, and a handful of test results dating *prior* to A.V.G.'s alleged onset date of April 1, 2009. (*See* AR at 184) (test scores from 2006 and 2008). Plaintiff does not appear to argue that a limited selection of test scores from prior to her 2009 onset date might be probative to the ALJ's 2018 decision concerning her 2015 application for benefits, and the Court should not be expected to craft any such argument for her.

reweigh that evidence. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted).[4] The undersigned therefore recommends that the Court decline to remand on this basis.

### B.  Educator Records and Opinions

The ALJ devoted substantial discussion to the report of geometry teacher Joseph Ritrievi, and he afforded "great weight" to Mr. Ritrievi's opinions, which generally supported a finding that A.V.G. is not disabled. (AR at 20-21). However, the record also consists of reports from five other teachers whose opinions go almost entirely unaddressed in the ALJ's opinion. (*See* AR at 198-221, 315-39). Plaintiff contends that the ALJ's failure to expressly address these teacher reports amounted to legal error requiring remand. (*See, e.g.*, Doc. 24 at 14). Because the opinions of these teachers sometimes diverge from the ALJ's findings in important ways, the undersigned agrees that his failure to discuss at least some aspects of these reports in his decision was error.

For example, although Mr. Ritrievi found slight problems at worst under most areas of the functional domain of acquiring and using information (*see* AR at 357), science teacher Rebecca Anderson opined that A.V.G. had "serious" problems comprehending and doing math problems and "obvious" problems as to most other areas under that domain (*see id.* at 212). Similarly, history teacher Dwenna Nelson stated that A.V.G. had "very serious" problems providing organized oral explanations and descriptions and "serious" problems with six other areas under that domain, as well as "obvious" problems in still two other areas. (*See id.* at 316). Special education teacher Genevieve Chavez also asserted that A.V.G. had "very serious"

---

[4] In addition to challenging the ALJ's evaluation of this evidence, Plaintiff argues that the ALJ "misrepresent[ed]" the record by finding from the MET report that A.V.G. could express herself "adequately in written language." (Doc. 24 at 14). While an ALJ may not misrepresent the record when evaluating evidence, the passage in question in a direct quote from A.V.G.'s education records. (*See* AR at 392) ("Special Education Language Arts teacher reports [A.V.G.] is able to express herself adequately in written language.").

problems reading and comprehending written material and math problems, "serious" problems

learning new material, "obvious" problems as to four other areas, and overall "very low skills"

that "hinder her ability to keep up with the rest of her peers." (*See id.* at 325). Additionally, art

teacher K. Martinez stated that A.V.G. had "serious" problems understanding school and content

vocabulary, "serious" problems reading and comprehending written material, and an "obvious"

problem expressing ideas in written form. (*See id.* at 333). Despite these obvious inconsistencies

with Mr. Ritrievi's report, the ALJ did not at all address the opinions of Ms. Anderson, Mr.

Chavez, Ms. Martinez, or Ms. Nelson on these points.

In a similar vein, Mr. Ritrievi found that A.V.G. had "obvious" problems in only two

areas of the functional domain of attending and completing tasks, while finding no more than

slight problems under all other areas. (*See id.* at 358). Although Ms. Anderson appeared to

largely agree with this assessment, she did state that A.V.G. had "obvious" problems refocusing

to tasks, carrying out multi-step instructions, and completing assignments. (*See id.* at 213). More

troublingly, Ms. Nelson opined that A.V.G. suffered from "very serious" problems in three areas

under that domain, "serious" problems completing work accurately without careless mistakes,

and "obvious" problems as to four other areas. (*See id.* at 317). As before, the ALJ did not

address these reports by Ms. Anderson and Ms. Nelson.

Mr. Ritrievi also concluded that A.V.G. had virtually no problems interacting and relating

with others. (*See id.* at 359). Although the other teachers were mostly in agreement with this

assessment, Mr. Chavez reported that A.V.G. suffered from "serious" problems expressing

anger, "serious" problems using appropriate language, and "obvious" problems obeying adults,

interpreting meaning of facial expression or body language, and using adequate vocabulary and

grammar to express thoughts and ideas. (*See id.* at 327). Curiously, the ALJ concluded from

these opinions that Mr. Chavez had found only "slight at best concerns in this domain." (*Id.* at 27) (citing Mr. Chavez's report by exhibit number). The ALJ did not explain how he interpreted Mr. Chavez's report of multiple "obvious" and "serious" problems to support a finding of "slight at best concerns," and he did not otherwise address the teacher's report. (*See id.*).

These findings are particularly relevant because the presence of "serious" problems in some areas of a functional domain may be indicative of a "marked" limitation in that domain, *see* 20 C.F.R. § 416.926a(e)(2)(i), while the presence of "very serious" problems may indicate an "extreme" limitation, *see* 20 C.F.R. § 416.926a(e)(3)(i). Thus, if these unaddressed teacher opinions concerning A.V.G.'s limitations were deemed credible, a factfinder might reasonably construe those opinions as broadly consistent with other record evidence supporting a finding of marked or greater limitations in the domains in question. Put another way, the reports submitted by these teachers are undeniably probative to the question of whether A.V.G.'s limitations are functionally equivalent to a listing-level impairment.

An ALJ does not need to discuss every piece of evidence in his decision. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (citation omitted). Still, an ALJ must discuss any significantly probative evidence in the record that does not support his decision, as well as his reasons for rejecting that evidence. *Clifton*, 79 F.3d at 1009-10. Accordingly, the ALJ's wholesale failure to discuss the probative opinions submitted by Ms. Anderson, Mr. Chavez, Ms. Martinez, and Ms. Nelson was legal error. *See, e.g.*, *Panas ex rel. M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 438 (10th Cir. 2019) (unpublished) (citing *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014)) (holding that remand was required due to ALJ's failure to explain how a teacher's "obvious, serious, and very serious problems factored into the disability determination"); *cf. Corley ex rel. C.M.C. v. Comm'r, SSA*, 752 F. App'x 635, 640-41 (10th Cir.

2018) (unpublished) (finding legal error where ALJ relied on agency opinions that "failed to consider one of the two teacher questionnaires" finding "very serious problems" in multiple relevant activities, and where there was "no indication in his decision that the ALJ recognized these omissions or took them into account in determining the weight to be afforded to those opinions").[5] Similarly, the ALJ's characterization of Mr. Chavez's report as showing only "slight at best" limitations in the third functional domain, despite a report showing "obvious" and "serious" problems as to several activities in that domain, also constituted legal error. *See, e.g.*, *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)) (holding that ALJ may not "mischaracterize or downplay evidence to support [his] findings").

The Commissioner contends that Plaintiff "[e]ssentially . . . .invites the Court to re-weigh the evidence" by complaining of the ALJ's failure to address these teachers' opinions. (*See* Doc. 28 at 11-12). As Plaintiff correctly notes, however (*see* Doc. 29 at 1-2), the issue is not that the ALJ erroneously weighed these teachers' reports against the other evidence; rather, it is that the ALJ *ignored* this evidence. To the extent that the ALJ found these teachers' opinions unpersuasive, he had an obligation to discuss them and to explain his reasoning for this conclusion. *See Clifton*, 79 F.3d at 1010. His failure to correctly follow this legal standard requires remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); *see also Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (unpublished) (citing, *e.g.*, *Byron*, 742

---

[5] Although *Panas* and *Corley* are unpublished decisions, the undersigned finds that their application of Tenth Circuit legal standards is highly persuasive since both decisions involve probative teacher assessments that were rejected or ignored by the ALJ. *See Panas*, 775 F. App'x at 438; *Corley*, 752 F. App'x at 640.

F.2d at 1234-35) ("If [the claimant] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

The Commissioner further suggests that if the ALJ had properly considered the teachers' opinions supporting a finding of disability, he would have nonetheless rejected them since his findings found other support in the record and since "several of the teachers generally agreed with Mr. Retrievi [*sic*]." (Doc. 28 at 12). This, too, misses the point—the ALJ *did not* appropriately consider or evaluate this evidence. "[T]his Court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The Court's review of the ALJ's decision must be based on the reasons stated therien, and "[a]ffirming this post hoc effort to salvage the ALJ's decision would require [the Court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Although the ALJ may ultimately conclude that these teachers' opinions do not support a finding of marked or greater limitations or that the reports are outweighed by other record evidence, he has not yet done so, and the undersigned may not speculate that such a conclusion is inevitable.

For the foregoing reasons, the undersigned recommends that the Court grant Plaintiff's motion to remand on the basis of the ALJ's failure to consider A.V.G.'s teacher reports pursuant to controlling legal standards. On remand, the ALJ should consider the reports submitted by Ms. Anderson, Mr. Chavez, Ms. Martinez, and Ms. Nelson, as well as any other significantly probative evidence from A.V.G.'s teachers, consistent with agency regulations and policies. To the extent that the ALJ finds that these teachers' opinions are to be rejected, he should accurately describe these teachers' probative opinions and state his reasons for rejecting them. Similarly, to

the extent that the ALJ finds these opinions to be entitled to lesser weight than other teacher opinions in the record, he should state his reasons for this conclusion.

### C.   Classroom Accommodations

Plaintiff also argues that the ALJ failed to compare A.V.G.'s behavior and abilities to that of children without impairments. (Doc. 24 at 6-8). More specifically, Plaintiff contends that the ALJ erred by failing to discuss the accommodations afforded to A.V.G. in her individualized education program ("IEP"), "such as extra time for assignments and assigned seating[,] . . . frequent feedback, repeated or rephrased instructions, redirection to task, test and homework-related modifications, and behavior management modifications and accommodations." (*See id.* at 6-7) (reciting these and other services). The Commissioner responds that the ALJ addressed certain accommodations and incorporated those accommodations into his findings. (Doc. 28 at 11). The Commissioner also observes that while an ALJ must follow certain policy requirements in considering a claimant's alleged limitations, he is not required to specifically discuss his consideration of each of these requirements. (*See id.*).

Plaintiff overstates her argument by asserting that "[a]dolescents without impairments are not in special education." (Doc. 24 at 7). A child's receipt of special education services, in and of itself, does not establish her limitations or abilities, since a child may be placed in a special education setting "for many reasons that may or may not be related to the level of [her] impairments." 20 C.F.R. §416.924a(b)(7)(iv). However, Plaintiff is correct that the special accommodations received by a child can provide "important context" in assessing the severity of a child's limitations. *See Corley*, 752 F. App'x at 639 (citing, *e.g.*, *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009)); *see also* SSR 09-2p, 2009 WL 396032, at *3 (Feb. 18, 2009) (directing the ALJ to determine "[w]hat kind and how much help does the child need

to do activities, and how often does the child need it?"); SSR 09-3p, 2009 WL 396025, at *3

(Feb. 17, 2009) ("The kind, level, and frequency of special education, related services, or other

accommodations a child receives can provide helpful information about the severity of the child's

impairment(s).").[6] As such, if a claimant has been placed in a special education setting and/or

received accommodations because of her impairment(s), the ALJ must consider that fact in

assessing her limitations. 20 C.F.R. § 416.924a(b)(7)(iv). If the receipt of accommodations is

significantly probative in assessing the child's limitations, the ALJ must discuss that evidence if

he chooses not to rely upon it. *See, e.g.*, *Corley*, 752 F. App'x at 640; *Clifton*, 79 F.3d at 1010.

     The Commissioner is correct that the ALJ discussed *some* of the accommodations

described in A.V.G.'s most recent IEP on file, specifically the fact that she "continued to need

help in reading, and required a mix of general and specialized education classes, with 17.5 hours

of special education, half an hour of speech therapy, and half an hour of social work services

each week." (AR at 19) (citing *id.* at 299-300). However, that same IEP also addresses a variety

of other highly relevant accommodations afforded to A.V.G. in light of her limitations, including

reduced auditory distractions, preferential seating, allowance of breaks for calming when a signal

is given, testing in small group settings, extra time and permission to use a spell checker when

doing homework, frequent feedback, short directions, repeated or simplified instructions, checks

for understanding, efforts to gain her attention before giving instructions, notice before being

called on, and certain accommodations for state or district testing, (*See id.* at 302-03). Although

these accommodations are significantly probative to a determination of the extent of A.V.G.'s

limitations in acquiring and using information, attending to and completing activities, and

---

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

interacting and relating with others, the ALJ did not address them and did not explain whether or how they factored into his decision.

Although the nature, extent, and frequency of accommodations provided to a claimant is one of several questions that an ALJ must consider when evaluating her limitations, the Commissioner is also correct that agency policy relieves an ALJ of the obligation to provide "formal answers to these specific questions" in all cases. *See* SSR 09-2p, 2009 WL 396032, at *2-3. However, the ALJ should address the evidence in a way that "create[s] a clear picture of the child's functioning in the context of the six functional equivalence domains." *See id.* In this case, because the aforementioned accommodations amount to significantly probative evidence concerning the extent of A.V.G.'s limitations and appear to provide support for a finding of disability, the ALJ was required to address whether and to what extent those accommodations informed his decision. Because he did not do so, the undersigned recommends that the Court grant Plaintiff's motion to remand on this basis and direct the ALJ to apply appropriate legal standards when evaluating and addressing A.V.G.'s accommodations.

### D.  Consultative Examiner's Report

The ALJ concluded that the report by consultative examiner Eligio R. Padilla, Ph.D (the "CE") constituted "[t]he most authoritative and detailed evidence as to the claimant's psychological function." (AR at 18). Nevertheless, the ALJ afforded "little weight" to the opinions expressed by the CE in his cognitive examination of A.V.G., which indicated only "borderline" abilities to sustain attention, concentrate, exert mental control, and reason nonverbally; "borderline" perceptual reasoning and working memory; "significant deficits in receptive and expressive language skills"; and a prognosis that was "guarded, even with the support of [A.V.G.'s] parents, her therapist and [her] educational professionals." (*See id.* at 20,

476-78). The ALJ primarily based this weighting on his finding that the opinions expressed in the CE's cognitive report were "highly inconsistent" with the opinions expressed in the CE's less detailed mental status examination in the same document, which reported "grossly intact" attention, concentration, abstraction, judgment, recall/memory, and reality testing. (*See id.* at 18, 20, 475-76). The ALJ also based this weighting on his finding that the results of the CE's cognitive examination were "inconsistent" with the opinions expressed by Mr. Ritrievi, who did not report significant limitations. (*See id.*).[7] Plaintiff contends that the ALJ improperly relied only on those parts of the CE's report that were favorable to a finding that A.V.G. was not disabled. (Doc. 24 at 15). The Commissioner does not address this argument, arguing only that the CE's mental status examination constituted substantial evidence supporting the ALJ's decision. (*See, e.g.*, Doc. 28 at 12-13).

"[I]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Panas*, 775 F. App'x at 436-37 (quoting *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008)). "This rule follows from [the] larger directive that 'in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" *Id.* (citing *Hendron*, 767 F.3d at 955). Likewise, the ALJ may not "downplay evidence to support [his] findings." *See Bryant*, 753 F. App'x at 641 (citing *Talbot*, 814 F.2d at 1463-64 (10th Cir. 1987)).

---

[7] Elsewhere in his report, the ALJ took note of other psychological evidence of record which could be construed as supporting a finding of non-disability. (*See* AR at 19). However, the ALJ found this evidence to be of "limited" value given the absence of multiple mental status examinations over time. (*See id.*). At any rate, the ALJ did not cite this evidence in support of his weighting of the CE's report, instead pointing solely to the report of Mr. Ritrievi. (*See id.* at 20).

Here, the CE report contained conflicting medical evidence in the same report: a mental status examination that largely supported a finding of non-disability, and a cognitive examination that provided at least some support for a finding of disability. (*See* AR at 474-80). The ALJ ultimately afforded greater weight to the mental status examination, finding that it was more consistent with the opinions of Mr. Ritrievi supporting a finding of non-disability. (*See id.* at 20). However, as previously noted, the record also includes opinions from A.V.G.'s other teachers that at times is more consistent with the results of the CE's cognitive examination. For instance, Ms. Nelson's opinion that A.V.G. suffered "obvious" to "very serious" problems in understanding, recalling, and applying concepts (*see id.* at 316) aligns closely with the CE's finding of "borderline" reasoning and memory (*see id.* at 476). Likewise, Ms. Nelson's opinion that A.V.G. had "obvious" to "very serious" problems in several areas of attending to and completing tasks (*see id.* at 317) is arguably consistent with the CE's finding of "borderline" ability to sustain attention, concentrate, and exert mental control (*see id.* at 478). As further discussed above, reports from Ms. Anderson, Mr. Chavez, and Ms. Martinez could at times also be construed as consistent with some portions of the CE's cognitive examination supporting a finding of disability. Having failed to weight or otherwise address these opinions elsewhere in his decision, the ALJ likewise failed to address them in his weighting of the CE's findings.

Other educational evidence could also be interpreted as supportive of the CE's finding of "borderline" abilities in the relevant domains. For example, according to A.V.G.'s IEP, standardized tests administered in the *seventh grade* showed that the claimant possessed a *third-grade* capacity to engage in oral reading, word recognition, and reading comprehension. (*See id.* at 391). Although the ALJ broadly discussed these findings in his decision (*see id.* at 19), he did not address them in his weighting of the CE's report, even though this data was arguably more

consistent with some aspects of the CE's cognitive test results than with his mental status examination. *See, e.g.*, SSR 09-2p, 2009 WL 396032, at *3 ("[C]hildren who are many grades behind in school often have a medically determinable impairment(s)."); SSR 09-3p, 2009 WL 396025, at *6 (considering whether a claimant is "reading, writing, or doing arithmetic at appropriate grade level" when evaluating ability to acquire and use information). Likewise, as addressed above, the IEP establishes that A.V.G. was afforded multiple accommodations that may be consistent with the more substantial limitations suggested by the CE's cognitive test results, but that the ALJ nonetheless failed to address. (*See* AR at 302-03).

The undersigned finds the Tenth Circuit's unpublished decision in *Bryant* to be both persuasive and instructive. In that action, the ALJ rejected the findings of a CE whose report generally supported a finding of disability as "an aberration" that was "inconsistent with other reports in the record." *See Bryant*, 753 F. App'x at 641. In reaching this conclusion, the ALJ cited evidence from medical documentation that supported a finding of non-disability, but she did not discuss other aspects of the documentation that were potentially consistent with the CE's opinions. *See id.* at 641-42. The ALJ also entirely ignored other record medical evidence that potentially supported a finding of disability. *See id.* at 642-43. The Tenth Circuit reversed and ordered remand, directing the ALJ to apply the correct legal standard in assessing the weight of the CE's examination. *See id.* at 643.

Like the ALJ in *Bryant*, the ALJ in this case premised his weighting of the CE's report solely on evidence that supported a finding of non-disability while ignoring similar sources that were potentially consistent with a finding of disability, all without providing any explanation for his failure to address those sources in the process. Because the ALJ "failed to apply the correct legal standard in evaluating the medical evidence and explaining [his] reasons for discounting

[the CE's] opinions" supporting a finding of disability, the undersigned recommends that the
Court grant Plaintiff's motion to remand and direct the ALJ to "reconsider the weight to be given
to [the CE's] opinions after conducting a more robust analysis" of the evidentiary record. *See
Bryant*, 753 F. App'x at 643.

### E.   Assessment of Parental Testimony

After reviewing the Plaintiff's testimony at the hearing, the ALJ concluded that her
"statements concerning the intensity, persistence and limiting effects of [A.V.G.'s] symptoms are
not entirely consistent with the medical evidence and other evidence in the record" (AR at 17),
and he afforded her testimony only "partial weight" (*id.* at 21).[8] Explaining this finding, the ALJ
acknowledged Plaintiff's familiarity with her daughter's day-to-day functions, but he concluded
that Plaintiff's opinions were "uninformed by any particular medical expertise." (*Id.*). The ALJ
also found that "substantial evidence of record suggests that the claimant is more functional than
alleged by Plaintiff – the consultive examination of record, in particular." (*Id.*). Plaintiff
challenges this credibility determination, citing inconsistencies in the CE's report and pointing
out that non-medical "other" sources are permitted under the regulations. (Doc. 24 at 25). The
Commissioner responds that the ALJ's credibility determination was proper given "conflicts
between [Plaintiff's] statements and other evidence." (Doc. 28 at 8).

Credibility determinations are the province of the factfinder and will be upheld if
supported by substantial evidence. *See, e.g.*, *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir.
2010). That said, "findings as to credibility should be closely and affirmatively linked to
substantial evidence and not just a conclusion in the guise of findings." *See Knight ex rel. P.K. v.*

---

[8] The ALJ afforded A.V.G.'s own limited testimony "some weight" with respect to her "subjective experiences"
regarding her interactions with others, (*see* AR at 25), a finding that Plaintiff does not challenge. The ALJ did not
evaluate A.V.G.'s credibility as to any other issue.

*Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (quoting *Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009)). The Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence," and credibility determinations will be found to be supported by substantial evidence "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

"In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight*, 756 F.3d at 1176 (citation omitted); *see also* 20 C.F.R. §§ 416.913(a)(4), 416.926a(b)(3), 416.927(f)(1), 416.929(c)(3) (providing for consideration of testimony from parents and other nonmedical sources). Indeed, the regulations call for the consideration of such nonmedical evidence "[b]ecause symptoms sometimes suggest a greater severity of impairment that can be shown by objective medical evidence alone." 20 C.F.R. § 416.929(c)(3). For this reason, the fact that Plaintiff's testimony amounted to a lay opinion "uninformed by any particular medical expertise," standing alone, was not a sufficient basis to disregard her testimony. *See id.*; *see also, e.g.*, *Panas*, 775 F. App'x at 440 (citing 20 C.F.R. § 416.926a(b)(3)) ("It was improper for the ALJ to disregard the father's evidence because it was a lay opinion."). The undersigned therefore turns to whether the ALJ's credibility findings were otherwise supported by substantial evidence.

The only other specific evidence that the ALJ expressly linked to his evaluation of Plaintiff's credibility, *see Knight*, 756 F.3d at 1176, was the CE's mental status examination (AR at 21); (*see also id.* at 18) (finding that mental status examination results "suggest to me that the claimant certainly has the mental capacity to acquire and use new information"). However, as noted above, the ALJ failed to apply the correct legal standards in weighing the CE's contradictory opinions. This error is critical to the determination of Plaintiff's credibility, given

that her testimony regarding A.V.G.'s alleged disability was arguably supported by the CE's cognitive assessment of "borderline" function in multiple activities but was inconsistent with the CE's mental status examination findings. Until the CE's conflicting opinions are weighed pursuant to proper legal standards, they cannot stand as substantial evidence in support of the ALJ's credibility findings.

The Commissioner next contends that the ALJ's credibility determination was justified due to other alleged conflicts between Plaintiff's statements and other evidence, particularly her own testimony that A.V.G. had reported improvements after beginning a medication regimen. (Doc. 28 at 8) (citing AR at 18, 45). As an initial matter, it is not clear that the ALJ himself "affirmatively linked" the medication issue to Plaintiff's credibility, as he appears to have cited A.V.G.'s medicated status only as evidence in support of his functional equivalence analysis. (*See, e.g.*, AR at 23, 24-25). Because the ALJ appears not to have cited this issue as "specific evidence he relie[d] on in evaluating [Plaintiff]'s credibility," *see Qualls*, 206 F.3d at 1372, the Commissioner may not do so on his behalf, *see also Haga*, 482 F.3d at 1207-08 (declining to "create or adopt post-hoc rationalizations to support the ALJ's decision").

Even if this were not the case, though, Plaintiff's limited testimony with respect to the impact of A.V.G.'s medication does not amount to substantial evidence in support of the ALJ's finding that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of A.V.G.'s symptoms was not credible. Plaintiff testified at the hearing only that the medication had "so far" resulted in A.V.G. being calmer and having fewer outbursts relative to her unmedicated baseline (AR at 46), while A.V.G. herself simply testified that the medication "may help" with her focus (*id.* at 65). However, neither testimony at the hearing nor anything else in the record establishes the *degree* to which A.V.G.'s function had improved as a result of

medication, let alone that the medication had effectively controlled her symptoms; rather, the testimony confirms only that medication resulted in some *unspecified* amount of improvement of function. *Cf., e.g.*, *Holcomb v. Astrue*, 389 F. App'x 757, 761 (10th Cir. 2010) (holding that credibility finding was proper where claimant's testimony was contradicted by evidence "demonstrat[ing] that medication had 'been relatively effective in controlling the claimant's symptoms'"). Moreover, A.V.G. testified that it was "kind of early" to assess any changes in function because she had only started taking her medication *two weeks* before her hearing (*see* AR at 65), a point that the ALJ appeared to concede (*see id.* at 46). Whatever impact this evidence might have had on the functional equivalence analysis—an issue the undersigned does not address—nothing in the record affirmatively suggests that Plaintiff's testimony concerning A.V.G.'s medication regimen in any way conflicted with her testimony regarding the nature and extent of A.V.G.'s limitations. Stated differently, the mere fact that A.V.G.'s behavior and focus improved to an unspecified degree as a result of medication is not evidence, let alone substantial evidence, that Plaintiff's testimony concerning A.V.G.'s limitations was not credible.

The Commissioner's remaining arguments concerning the ALJ's credibility determination fare no better. First, as the Commissioner accurately observes, the ALJ apparently found that A.V.G.'s guitar hobby was in conflict with testimony concerning her alleged inability to focus. (*See* Doc. 28 at 8) (citing AR at 18). However, the ALJ's conclusion mischaracterizes the record: Plaintiff testified not that A.V.G. could adequately focus on playing or learning the guitar, but that A.V.G. would play her guitar *instead* of focusing on her school or domestic obligations. (*See* AR at 54); *cf., e.g.*, *Sitsler v. Astrue*, 410 F. App'x 112, 117-18 (10th Cir. 2011) (citing, *e.g.*, *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 742-43 (10th Cir. 1993)) ("[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit his

claims of disabling limitations."). Second, although the Commissioner is correct that the ALJ also noted A.V.G.'s use of social media and text messaging (*see* AR at 18), the decision does not explain how such activities undermine Plaintiff's testimony concerning A.V.G.'s alleged lack of focus or limitations on acquiring new information, and no such explanation is apparent on the record. Finally, while the Commissioner cites A.V.G.'s testimony concerning her babysitting duties (*see* Doc. 28 at 8-9), the ALJ did not cite this evidence in his decision, much less affirmatively link it to the issue of Plaintiff's credibility. The Court may not consider post hoc rationalizations that do not appear in the ALJ's decision. *See Haga*, 482 F.3d at 1207-08.

On this record, the undersigned cannot say that the ALJ's findings concerning Plaintiff's credibility were supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Accordingly, the undersigned recommends that the Court grant Plaintiff's motion to remand on this basis, directing the ALJ to properly evaluate the evidence with respect to Plaintiff's credibility.

### F.  Functional Equivalence Analysis

Plaintiff also argues that the ALJ's functional equivalence analysis—specifically his finding of less than marked limitations in the domains of acquiring and using information, attending to and completing tasks, and interacting with and relating to others—was not supported by substantial evidence. (Doc. 24 at 8-24). Because remand is required due to the ALJ's failure to evaluate certain evidence pursuant to the correct legal standards, the undersigned does not reach these arguments.

## V. CONCLUSION

The ALJ erred by failing to apply the correct legal standards as to his assessment of evidence provided by A.V.G.'s educators, his evaluation of A.V.G.'s need for accommodations, his weighting of the consultative examiner's report, and his determination regarding Plaintiff's credibility. Because these errors require remand, the undersigned recommends that the Court **GRANT** Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing (Doc. 24), and that the Court **REMAND** this case to the SSA for proceedings consistent with these proposed findings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**